The next case, number 241286, Maya Water Projects Netherlands B.V. v. Financial Oversight and Management Board for Puerto Rico. At this time, would counsel for the appellant please introduce himself on the record to begin. Good morning, good afternoon, Your Honors. I'm Benedict Bernstein from Whiten Case LLP for Plaintiff Appellant Miya Water Projects Netherlands B.V., now known as Water Justice for Puerto Rico B.V. May I please reserve three minutes for rebuttal? You may. May it please the Court. This case presents the question of whether the Financial Oversight and Management Board for Puerto Rico is uniquely immune for cases arising under TEPRA, Puerto Rico's public records law. The Board concedes that Section 106A of PROMESA channels all suits against the Board into federal court. Indeed, the Supreme Court held in CPI that PROMESA provides an exclusive federal forum for suits against the Board. Where statutes other than PROMESA abrogate the Board's immunity for particular claims. The Board also concedes that TEPRA creates a cause of action against the Board, thereby waiving its sovereign immunity. PROMESA plus TEPRA thus provides a complete waiver of any immunity asserted by the Board here. But the Board resists that simple arithmetic, arguing that under the 11th Amendment and Pennhurst, 1 plus 1 equals 0. The upshot of the Board's argument is that because Congress provided an exclusive federal forum for suits against the Board, no court has jurisdiction to enforce the provisions of PROMESA of TEPRA against the Board. Well, the legislature could have thought that. The legislature says, okay, the Board's part of the government. We're going to write the government can be sued in state court. We know, because we read PROMESA too, that these Board claims are going to go over to federal court. And we're not going to say anything about that, because we know that if we say nothing, because it's a clear statement rule, and that's what happens, then we're protecting the Board. That's one way to look at it, and you're looking at it the other way. But the point of a clear statement rule, to me, is if we don't know which, then we have to presume the immunity continues. Yes, Your Honor, but the legislature and the Commonwealth also instructed how TEPRA was to be interpreted, which was to be interpreted in favor of the party requesting the records. And to the extent that there was a conflict between two provisions of law, that the provision most favorable to the person requesting the records should prevail. Here, to the extent that there's a conflict between the waiver that is expressed as to Commonwealth courts and PROMESA's claim channeling provision, the claim channeling provision should prevail. Counsel, I understand that argument very well, but it still seems to be an argument by implication. You're asking us to read words that don't explicitly waive immunity to be a waiver, and my struggle with that is that the Supreme Court has said it has to be expressed and very, very clear. So how can we get around that clear statement by the Supreme Court that there needs to be an expressed clear statement in a statute? Thank you, Your Honor. Your Honor, the Supreme Court has recognized that the expressed waiver may be expressed either by the expressed text or by overwhelming implication. So in the Critts case, for instance, and in Feeney, both cases where there was no expressed textual statement of a waiver of a state sovereign immunity in federal court, or an expressed waiver of the government's in the Critts case, that by looking at various provisions together, one finds that the overwhelming implication of the entire statutory scheme is such that there was necessarily an intent to waive immunity in federal court. That is the situation that we're in here. TEPRA was enacted against the backdrop of PROMESA. The commonwealth knew full well that the old... But what's the response to my question, which is, look, you've got to admit, this board is an odd thing, right? And so the legislature might have thought, you know, yeah, it's under our authority and that's all great, but we don't really control it the way we control everything else, and we have some concerns about that. And we also know there's a claims channeling provision. And we understand the 11th Amendment. And we understand the clear statement rule. And so we know if we don't say anything, what we've done is we've let everybody else in the government be sued. That's fine. And because the board is an odd thing and we don't really want to expose it to this litigation, we're not going to say anything. And then not one and one equals two, but that is the reason we're not going to say anything, because we know how all the law works, and that's going to protect the board from these kind of lawsuits. I don't know if that's what they want, but that to me seems to be the whole point of the clear statement rule. Yes, Your Honor. In this context, there is a clear statement, though, provided in PROMESA, which says that all claims arising under any law, whether it's state law or common law or federal law, should be heard by the district court for the District of Puerto Rico. Against that backdrop, there's no doubt that TEPRA waives the board's immunity for claims arising under TEPRA. The question would be as to where that waiver is effective. Again, why can't the board leverage the claims channeling provision to say, aha, that's great, that solves our problem. We want to protect the board because of its unique status, and so by saying nothing, we protect it from being sued, because it can't be sued in state court because of the claims channeling provision, and the 11th Amendment prevents it from being sued in federal court, and we like that. Why is that not something the legislature could have done? I believe the legislature could have done that, Your Honor, but if it had intended to do so, it would have waived immunity in less expansive terms. For instance, it might have said that any entity amenable to suit in state courts. That is not what it said. It said, in many different ways, every entity within the government of the Commonwealth, the legislative, the executive, and judicial branch, municipalities, public corporations, would be subject to the terms of TEPRA, would be required to comply with it, and would be subject to suit for failure to so comply. It then instructed that in interpreting TEPRA, it should be liberally construed in favor of the requester. So to read a statutory scheme that provides an express statement of that the place to sue the board is in federal court, and that... But those broad statements, right, sue all these, you know, all these, right, the Puerto Rico government is made up of a lot of different entities, right? So you're taking some very broad language about general thrust and then applying it to a very unique, small piece of the board that has very unique characteristics and saying, take all these general thoughts, put them together, and you come up with the answer. How does that align with a clear statement? Well, Your Honor, I think your question drives a fundamental point here, which is the board is unique. And in that sense, the line of questioning, and I don't want to divert to the Pennhurst question, but I think that the best resolution to that question actually is just to hold that Pennhurst simply doesn't apply to the board. It doesn't make sense to apply Pennhurst to the board because it raises these kinds of questions. Where the commonwealth lacks authority to submit the board to suit in commonwealth courts, but does not, but has authority to waive its immunity, when it has clearly waived its immunity, it shouldn't matter what venue the commonwealth chooses, because the board is a creature of federal law. So there is no Pennhurst problem, no problem of federalism, no imposition on the commonwealth's sovereignty to have a federal court instruct the board's compliance. So that may be your best argument, but you acknowledge we've applied Pennhurst to Puerto Rico previously, correct? Yes, Your Honor, and we do not ask you to revisit the question of whether Pennhurst applies to the commonwealth. The commonwealth is established pursuant to the compact of Congress. The board is not. The board is established by PROMESA. In passing PROMESA, and specifically Section 106A, Congress made the policy determination, as it is its prerogative to do under the Territory Clause, that federal courts would ensure the board's compliance with both commonwealth and federal law. So there is no Pennhurst problem that applies to the board that might apply to an entity that the commonwealth itself creates. But, counsel, if the board, if you're saying the board is an entity of federal law, a creature of federal law, then how could TEPRA have waived its immunity from suit? In other words, if it's not just a part of the commonwealth government, like all the other arms of the government, then why would TEPRA have even had power to do what you're saying? So PROMESA expressly provides that, except as preempted by the Act, the general provisions, general and specific provisions of commonwealth law and of federal law would apply to the board. So in establishing the board within the commonwealth, the territorial government of the commonwealth, Congress determined that the commonwealth would have the authority to regulate the board, but that it would be a federal court that would ensure the board's compliance with commonwealth law. And to the extent there was a conflict, that PROMESA would apply, and that it would be up to a federal court to find that conflict. I think one of the things that I've been trying to think through is, you're asking us to put the statutes together, which I understand, but when I read the text of TEPRA, and again, I think about what the Supreme Court has said, you point to parts of TEPRA that you think support your argument, but I see other parts of it that seem to undermine your argument, and specifically that it provides for processes that are unique to the commonwealth court. So in other words, all of TEPRA is written with the assumption that the lawsuits that are filed are going to be adjudicated in the commonwealth courts, and there's unique procedural steps that have been included. So none of those make sense in federal court. And again, as Judge Aframe has been saying, given that this was done with PROMESA in the background, doesn't that actually suggest that the commonwealth should have been more specific in making clear that this claim could be brought against the board in federal court? Again, we're left to sort of try to imply the right outcome, and that seems to be contrary to what the Supreme Court has told us to do. Yes, Your Honor, it's clear that the procedures that are described in TEPRA are unique to the commonwealth courts. The Supreme Court has on many occasions, and these are cited in our briefs, disregarded the fact that there were procedures unique to commonwealth court when finding that the statute waived immunity in federal court. The key point here is that the commonwealth had no power to determine the procedures that would apply to the board, and it also had no power to change the federal court procedures that would be employed that Congress had determined would be exclusively available. And I think there's no doubt that if Section 106A was enacted as part of TEPRA, or even in a prior enactment by the commonwealth, that the creation of unique procedures that are within the can of the commonwealth to create and regulate would not undercut the force of PROMESA, of commonwealth itself had chosen that path, which is, again, why I think it goes back to the question of the application of Pennhurst. Thank you very much. Thank you, counsel. At this time, would counsel for the appellee please introduce himself on the record to begin? Good afternoon, Your Honors. Mark Harris for the Financial Oversight and Management Board for Puerto Rico. It's well settled that in order to waive sovereign immunity, a sovereign has to say so in clear and undistinguishable terms. And the waiver also has to be forum specific. So wherever there is immunity, there has to be a clear and unmistakable waiver as to that immunity. The mere fact that there is a waiver that would apply in territorial court, let's just say, would not apply in federal court, because if there's immunity in federal court, there has to be a specific clear and unmistakable waiver in federal court. Now, MIA has two arguments for why they think the case can proceed in federal court. First argument is that they think that there is clear and unmistakable language waiving immunity in federal court. That is clearly not true. In addition to the reasons that Judge Aframe stated, there is no reference at all to anything that would resemble even a mention of federal court. I'll get to that in a minute. The second argument, though, that they say is a little hard to understand. I think what they seem to be saying is the clear and unmistakable rule doesn't apply at all in this situation, because there's just no immunity at all. The Board just doesn't have immunity in federal court. So you don't have to worry about whether or not the waiver is clear and unmistakable, because there's nothing to waive. There's nothing there. So both of these arguments are wrong. Let me just go through the first one. It's really pretty simple. There needs to be, to have clear and unmistakable language, there needs to be language that in some way refers to federal court. There is nothing here that refers to federal court. If anything, as I believe, Judge Rickle, you mentioned, the references are all to commonwealth court, the court of first instance, special petitions, even describes how the justices of the Supreme Court are supposed to appoint judges who are going to hear these claims. There's nothing that even remotely suggests federal court. Nothing. The Supreme Court has said many times, implications don't work. There has to be actual language that would satisfy the test. And there's simply nothing here. In addition to that, as Judge Aprim, as you mentioned, it would have been very easy for the legislature to have just spelled out if they wanted, to have spelled out that there is, that they intend to waive all immunity in federal court. The argument that I heard from my friend on the other side actually has it quite the opposite. We're not asking for a special exception for the board. It's the other way around, which is that on his interpretation, the board would be the only entity that would not have any immunity in federal court. Right now, as far as we can tell, TEPRA doesn't waive any governmental entity's immunity in federal court. The governor, there are no cases we're aware of where any Puerto Rico official or entity, part of the government instrumentality, has ever been sued in federal court. The reason why is it's a big deal for a sovereign to agree to be sued in somebody else's court. That's why it's an ask, the clear and unmistakable rule exists in the first place, because we do not automatically assume that any sovereign, even if it's willing to waive immunity in its own courts, will be willing to do it in somebody else's court, including federal court. On his rule, the board would be the only entity that basically doesn't have any immunity in federal court and can be sued there under TEPRA. In fact, I think, if I can understand this argument correctly, it wouldn't just be TEPRA. I think what he would think would be any situation where any statute waives immunity in territorial court for the government, those entities would still be immune in federal court, but not the board. The board would be stripped of everything, TEPRA, anything else. If you look at their reply brief, it's interesting, actually, that most of the reply brief doesn't have much to do with TEPRA. It's really statements in general about how there just doesn't seem to be any protections for the board because of this, whatever their argument concerning Pennhurst. Even on this first argument, there's nothing that suggests that the federal court's immunity in federal court is being waived. Let me turn, then, to the second argument, which I'm not sure maybe this is their primary argument. They seem to think here that, as I said, that there's no immunity in federal court for the board to begin with because somehow federalism doesn't come into play. They tie this to Pennhurst. There's a very simple, straightforward reason why, of course, the board has immunity in federal court. First of all, this court has established for a very long time that Puerto Rico itself has 11th Amendment or 11th Amendment-like immunity. Going back to cases in the 80s, I believe Justice Breyer, when he was on this court, issued that opinion. Puerto Rico itself has immunity. We know that the court below decided that the board is an arm of the state, an arm of Puerto Rico. They say explicitly they're not contesting that. They're not contesting that Puerto Rico is an arm of the state. If that's the case, it's a QED. Again, if Puerto Rico has immunity in federal court under the 11th Amendment and the board is an arm of Puerto Rico, then the board has 11th Amendment immunity in federal court. I think they would say, well, the federal government created the arm, stuck it in here. It's all a creation of Congress in a slightly different way than when Puerto Rico creates a new agency within Puerto Rico pursuant to the compact in the Puerto Rico Constitution and that that should make a difference. That Congress designed this, decided where it should go. Congress owns this thing. Including in its ownership, it said everything should be in federal court. Puerto Rico has a little bit of immunity to say it can be sued. Once it can be sued, then Congress owns this thing and it wants it in federal court. That's the end of it. Pennhurst is not a match here. I guess there's a few answers to that, Your Honor. The first thing is that once they've conceded that the board is, or at least they're not contesting that the board is an arm of Puerto Rico, I think that kind of ends the matter. I'm not sure what this other exception is that they seem to be making. Some arms are created differently from other arms. They would say because it's literally created by a statute of Congress. We create this board and we stick it over here. We didn't ask the Puerto Rico legislature if they want it. We just stick it there and we create all these rules about it and that that's what the difference is. And specifically then after creating it says that all lawsuits have to be brought in federal court. Right. The argument I heard was that 1 plus 1 has to equal 2. This is really 0 plus 0 equals 0. It's a jurisdictional provision. It doesn't waive immunity. The court went out of its way to say there, they just say if there is no immunity here and you're able to bring a lawsuit, then they're being channeled here. It doesn't do anything more than that. It's channeling provision. It doesn't express a view about whether immunity exists or has been waived or has been abrogated. It doesn't do any of those things. All it does is say if you're able to get to court, this is the court you go to. It doesn't solve the problem that if there's immunity in federal court, you haven't gotten around that. Now then they want to say, okay, we're going to somehow combine that with whatever Puerto Rico did with TEPRA. Granted that it waived immunity in territorial court. You still haven't solved the problem. If there's immunity in federal court, then the waiver by Puerto Rico as to TEPRA doesn't apply to federal court unless they said so. And it didn't. They didn't say it so clearly and unmistakably. So it doesn't do that. And 106A doesn't do that either. So they haven't solved this problem. It's 0 plus 0 is still 0. Counsel, is what you're arguing then that Congress actually, through the jurisdictional provision, intended to decrease the number of claims that can be brought up against the board? Because that is the outcome, I think, of your argument, right? Because it can only be sued in federal court. And therefore, for claims that could be brought against it in state court, they can't be brought at all because of the jurisdictional provision. So is that really what you're saying? That Congress intended for the board to be protected from more types of claims than every other Commonwealth entity? I don't think we're necessarily saying that. I mean, there are other provisions which are also at issue, which are not issued in this appeal, but the court below, at least the magistrate dealt with. There's a preemption issue. There's another provision of PROMESA which says that Puerto Rico can't control or in any way influence the board, section 108 of PROMESA. So there are other reasons why Puerto Rico cannot control or exercise authority over the board. I guess what I'm trying to say is the mistaken idea of what 106 does is, I think, part of the problem with what my friend is arguing here. He said that 106A says that any time a suit can be brought in Puerto Rico, it can also be brought in federal court. That is absolutely not true. That's not what the court said. What the Supreme Court said was, if there's no other impediment, if there's no other immunity problem, then sure, then 106A says, bring it over here. Don't bring it in territorial court. Bring it into this court. But again, it didn't get rid of the problem. What it was dealing with when it made that statement about where cases can be brought, where there has been a waiver, where there's been an abrogation, it was talking about federal claims. For example, section 1983 has an abrogation built into it. So if there was a suit brought against Puerto Rico or being brought against the board, that may have to go to federal court and the immunity problem has been solved because, assuming there's no other issue, a preemption issue or anything like that, just on immunity grounds, you've solved the problem because there's already an abrogation. It's not saying that an abrogation or a waiver over there in territorial court somehow works over here. That makes no sense. That was another argument that I've heard from my friend, and it's in their briefs, which is that, well, just get rid of Pennhurst and you'll solve the problem. I don't even know what that means. Pennhurst is not a rule that's being applied. Pennhurst is an application of a more general idea, which is, as I started off with, every immunity can only be overcome with a clear and unmistakable waiver or an abrogation. The reason why you can't just apply one from territorial court to federal court is that it has to be, you have to show that the immunity here is being waived. And as I said before, it's a common principle that just because a sovereign waives its immunity in one place, it doesn't in another. This court had the case of, I think it's called Diaz-Fonseca versus Puerto Rico. It's a 2006 case of this court. It dealt with, among other things, the general negligence statute, so a general sort of Tort Claims Act type of action against Puerto Rico. Puerto Rico had waived that, like many states do. So if you want to sue us for some kind of a tort, you can sue us in our own courts. This circuit said, that doesn't mean that you can sue Puerto Rico in federal court. Sovereigns are very, very wary and very reluctant to go allow themselves to be sued in federal court. Counsel, you're absolutely right about the usual background rule, but this is what makes this a difficult case. That's why we're having oral argument, is it's not the normal situation. Again, please help me understand if I'm misunderstanding something. I think the situation, though, that Congress has put Puerto Rico in is now, if they want to pass a statute like TEPRA, where they are waiving immunity for arms of the state in their own courts, they can't actually do that for the board. So they have to single out the board in every single statute that they pass from now on, is what you're saying, because of this forum selection clause that says all claims have to go to federal court. So even when the Commonwealth wants the board to be sued, it has to specifically call it out. I don't think so, Judge Rickleman. What I'm saying is if they want to effectuate a waiver, the waiver has to be across the board. In other words, they'd have to also waive it as far as their own governmental visuals. No, but see, what I'm trying to say to you is they want to make all arms of Puerto Rico suable in their own courts for TEPRA. They don't want to make them all suable in federal court. They're doing exactly what you have said, which is they're exercising their right to say you can only sue us in state court. But then what do they do for the board? So they're in a bit of an impossible situation. Do you understand my question? In other words, they'd have to make all of their arms of their state suable in federal court just so the board can be sued? That seems to go against what the 11th Amendment is about. I don't think it does, Your Honor. Again, maybe, you know, I don't want to make their argument for them. They're not arguing that they're not an arm of the state. I don't know what would have happened if they were challenging that. You think it's correct that it is an arm of the state? But going back to arm of the state for a second, the reason they're an arm of the state, the board is an arm of the state, is that the main thing this court looks to is where judgments would get paid out of, right? So it gets paid out of the same public fisc. So sort of the premise of the whole idea I don't think is correct. In other words, if there were a judgment against the board one way or another, that would be payable out of Puerto Rico's funds. Yes, it was created by Congress, but that's only one factor. The board is part of the Puerto Rico government. The board is subject to the rules of Puerto Rico except where they're preempted. The board is, the officials are territorial officials. That's what the Supreme Court held in an earlier case. It's part of Puerto Rico. Right, but so then again, if what the commonwealth wants as a sovereign government is to have the board sued, it has to call it out especially, that's your argument, it has to call it out especially and say that even though for the rest of the commonwealth government we don't want them to be sued in federal court, we're permitting the board to be sued under TEPRA in federal court because of the unique posture of the board. You're saying that's what they have to do every time. And to be clear, I just want to be forthcoming, I'm not even sure that would be allowed because you can't single out the board. That's what 108 says. And it hasn't been litigated yet, but it's not so clear that Puerto Rico can just say this one entity, we'll throw that one to the wolves. But that goes back to my original question, which was that, so then you're suggesting that Congress in just what was supposed to be a forum selection class has actually limited the types of claims that can be brought against the board, right? Isn't that the practical outcome of the argument you just made? I think, I'm not sure how to answer that. I think all 108 does is say where claims can be brought. And there may be, it's complicated because there are many overlapping doctrines here. There's a preemption doctrine, there's this anti-control doctrine. So I don't want to say what would happen if they did this or if they did that. I think you can't, Puerto Rico can't single out the board. I think that's the point. You are not saying, are you, that had Congress wanted to, assuming the board has sovereign immunity, you're not saying that Congress itself could not have abrogated that expressly? Oh, sure. That's all I want to know. Yes, completely. I mean, I think CPI says clearly if it requires, it would have required a clear and unmistakable statement. And if there had been, but there wasn't, then abrogation would have been possible. Congress can do the same, by the way, for Puerto Rico itself. If I could just make one last point about that, the idea that somehow the rules should be different here because there's no federalism issue here, that's not true at all. Take Indian tribes. We talked about this in our brief. It's discussed much more in the CPI litigation. Indian tribes don't have a federalism relationship with federal government. They are, there's congressional plenary control over Indian tribes. If Congress wanted to, Congress could change, could do something like put a board in place with an Indian tribe. Nevertheless, it's tribal sovereign immunity. Those two things don't go hand in hand. The fundamental aspect of being a sovereign is that a sovereign cannot be sued in any court unless it consents to doing so. That's the fundamental idea. It's not connected to federalism, excuse me. Thank you, Counsel. Thank you, Counsel. At this time, would Counsel for the Appellant please introduce himself back on the record? He has a three-minute rebuttal. Thank you, Your Honors. Just quickly a question of what was not contested and what is being contested. To the extent that the Court finds that it should proceed under the strict 11th Amendment framework that it applies to the Commonwealth, we don't take issue with the finding of this Court that the board would be an arm of the Commonwealth for that purpose. We do, of course, contest whether that entire analysis should apply to the extent that Pennhurst applies to the Commonwealth and its arms that it itself creates. I think that my colleague's concession, Judge Rickman, to your question, that it's really they would not agree that even if the Commonwealth wanted to make the board amenable to suit in federal court and express so in its own way, that it would be an arm of the Commonwealth. That it would have its own statutes, that that would be permissible. And to the extent that they raise questions of preemption and conflict, those are questions that can be litigated at the district court, in fact, were litigated at the 12b6 stage, which the magistrate judge found that there was no conflict and that Mia's claim survived a 12b6 motion. And that portion was set aside by the district court because the district court found that it lacked subject matter jurisdiction. So once this court resolves the question of subject matter jurisdiction, we can go back to the district court and pick up from where we were, pursuant to any further instruction from this court, and perhaps even just pick up from the objections to the 12b6 portion of the motion to dismiss. Regarding the federalism concerns, the board seeks to inject a problem that we are not asking you to create, which is we are not asking the panel to revisit its holdings on the application of the 11th Amendment to the Commonwealth. We ask only that as to the board, which was created by PROMESA pursuant to the territories clause and inserted as part of the 11th Amendment, that it be allowed to revisit its holdings on the application of the 11th Amendment to the Commonwealth. We ask only that as to the board, which was created by PROMESA pursuant to the territories clause and inserted as part of the 11th Amendment, that it be allowed to revisit its holdings on the application of the 11th Amendment. We ask only that as to the board, which was created by PROMESA pursuant to the territories clause and inserted as part of the 11th Amendment, that it be allowed to revisit its holdings on the application of the 11th Amendment.